All right, we'll hear the case of United States v. McKoy. I see counsel are present and we have Judge Agee in full view and Judge Traxler is on by telephone from his location. And we'll begin by hearing from you, Mr. Ashton. Thank you, Your Honor. May it please the court, I represent Antonio McKoy. He was convicted of a drug conspiracy case, continuing criminal enterprise, 60-month consecutive sentence for a firearm and a number of other concurrent drug sentences. His probation seemed to apply just about every enhancement they could and the judge went along with it and assigned maximum sentences on every count. I was not trial counsel. I inherited it for the sentencing and for appeal. And while I don't think anyone condones Mr. McKoy's drug activity, it's our position that he had an unreasonably long sentence. I think we've lost counsel. Can't hear me? No, I couldn't hear you. Now I can. Yeah. Did I start again? Yep, you're okay now. Okay. Your machine froze up. All right, we did not notice that. Yeah. Anyway, I don't know how far I got. But anyway, what we're trying to get is either a new sentencing hearing or a new trial because it's our position that Mr. McKoy's sentence is unreasonably long. I'd like to address first the CCE special verdict form issue. It was not raised at trial by counsel, so I've signed that as plain error. Can you hear me now? I couldn't hear you. Yes. Okay, very good. And it's our position that this is the type of case that the jury must unanimously agree on which three specific violations make up the series of violations. There ought to be some type of special verdict form like we have in the drug cases on amounts, firearm cases on brandishing and discharging, bank robbery cases and things of that nature. Let me ask you. It clearly would have been nicer to have that information, although we may have it from the fact that the jury convicted on other counts. But setting that aside, is there any rule that a special verdict form is mandatory? In other words, is it error to have submitted a general verdict? We cited Apprendi in our brief, and I think it's something that the jury has to make a factual determination is if there's a greater sentence or something of that nature, that there should be a special verdict form. And in this particular case, it goes up to a 20-year, I believe, mandatory minimum sentence. And the seriousness of the CCE charge as it relates to the conspiracy being above that conspiracy being a lesser-included offense, a special verdict form should be required, certainly as to… Well, do you have a case that provides that? Most of the cases, I think all the cases I've read, simply require the district court to instruct the jury, as it was instructed here, that it must be unanimous as to the three predicate crimes. And I haven't seen a case yet in this area where it's been found to be an abuse of discretion or error to have required the special verdict form. I mean, do you have a case that has required it and said it was error otherwise? Not a specific case. Now, the Brown case, of course, dealt with, I believe, drugs and money laundering and a firearm, as did the case here. And so the Brown case is the one that I rely on with the Fourth Circuit, and it did say that it was subject to harmless error review. And the Brown case found it was not harmless because they could not tell which particular cases the jury relied on. Now, I know in this case, Mr. McCoy was convicted of several other drug offenses, but I would say out of an abundance of caution, there ought to be a special verdict form as to which those were to make sure there was a unanimous agreement on each of those. Well, the Supreme Court in Richardson in this CCC charge area only required that the jury unanimously agree there was no requirement of a special verdict form. It might be prudent in some circumstances, but there doesn't seem to be any direction from the Supreme Court that would require it. Well, I agree with that. I think we may need some more direction, but what I think the argument here is that they're looking at Brown and seeing it had the same type of charges, and a new trial was warranted, that there's a possibility here I think something as serious as this ought to have a special verdict form. And I also have a, I guess the motion due to rule 29 motion for judgment of acquittal is also based just basically on the CCE charge. I think there was sufficient evidence to go to the jury on the others, but we would argue on that that the continuing criminal enterprise should have been dismissed for insufficient of the evidence. And basically the prong that I was arguing there had to do with the leadership role and the insufficiency of the evidence on the leadership role under sales and slave. And I tried to limit it, but it's certainly our position that there was no drug trafficking organization or leadership role. I think the trial attorney referred to it as just basically a loose organization, a bunch of guys from Garland that were out buying and selling drugs, which is very similar to Slade who was actually here in Craven County where I live, a mid-level drug dealer, buying and selling drugs. And so those are the two issues on the CCE case. I would submit there's one, there's really only one trial evidentiary issue that we did raise on the appeal and I would argue to the court it is quite significant. And that is the, what I term the abortion issue. The trial judge let a lot of irrelevant and prejudicial evidence in about Mr. McCoy's desire for his girlfriend Andrea Parker to get an abortion. The evidence, wasn't the evidence a little more fulsome? I mean, the evidence was Mr. McCoy's role in her decision and his insisting that she have the abortion, his going to the abortion center, wanting to be in there to witness it. And it seems to me this is the type of control that we have associated in the past with godfather type of cases where you have an enterprise and somebody's in control of almost everything. I think it's relevant to that extent and you didn't make a prejudice argument in the district court and I'm not sure how far that would have gotten but it seems to me the district court admitted it for relevance to show McCoy's control over the participants. And why isn't that a discretionary decision that the court could have made? Well, I would submit it was actually a wrong decision. I believe this was just a boyfriend girlfriend thing. Obviously, Ms. Parker was in love with Mr. McCoy. It was a personal thing and as far as control goes, she did not have it. She went to have it but made her own mind up not to, didn't tell him and the judge let in all the facts about that and then on redirect after an objection to that as well, let in facts that he then called her names and said she deserved this, that and the other and just went on and on. I would submit it's very prejudicial and I would also submit that the trial counsel did not need to make a second objection just to the prejudice fact because the judge would certainly put on notice that he was objecting to this type of evidence. I thought the objection was based on relevance. Well, that's what he said the first time but I would submit that Rule 403 just follows. You have to first see if the evidence is prejudicial and then second, I mean first see if it's irrelevant. If it's irrelevant, is it prejudicial and it's sort of subsumed in that as we go forward. When the judge just denied it, a lot of trial counsel don't want to keep objecting to everything and it went on and on. When it went back, the redirect examination, he objected again and I would certainly submit that was sufficient and the error was, if it is a plain error standard for that part of it, I would submit it was still plain. It was certainly not harmless. Very, very prejudicial and abortion is a hot issue all over. It's political. People have strong opinions on both sides and you got a jury in eastern North Carolina trying to decide a case with drugs and to just go off on that tangent twice with Ms. Parker, we would submit was very, very prejudicial and enough so that it would entitle Mr. McCoy to a new trial. Some of the other sentencing issues I talked about, I think the leadership role and livelihood are sort of subsumed in the criminal enterprise arguments that we made on leadership role. I wasn't going to address those. Also, we have objections to relevant conduct and violence and the problem I have with that, and I think most trial counsel do, is the fact that the probation and then the judge can go way outside the actual evidence that came in at trial. I know the case law is not real supportive of defendants on that, but in the grand scheme of things, in this case, they brought in a lot of relevant conduct going all the way back to 2007. Some violence conduct that went way preceded that. Nothing about violence at the trial. The only firearm count in charge had to do with the agents setting up the confidential informant to see if they could buy a gun for Mr. McCoy, and I think the agent testified he never saw Mr. McCoy with any type of weapon or firearm on any of the other occasions. And so, it's our position that you just have to look at that in the grand scheme of things. As far as obstruction of justice, I know we tried to get you some better pages to look at on those letters, and of course, the phone call, and again, there were no threats, there were no promises, there were no harsh words. Everything we contend was supposition that Mr. McCoy maybe meant that Ms. Parker not testify, but the agent himself testified there's nothing in the letters or the phone calls, any direction to Ms. Parker or her mother for him not to testify. Ms. Parker testified several times. She loved the defendant. She just was, I guess, head over heels about him. She never put her in harm's way. There were never any threats, never any force to do anything, and if you look at those letters and the timeline of the phone call, the phone call was in November of 2017. The trial here didn't start until May of 2018. One of the letters was dated in February of 2017. The other didn't have a date on it, I assume, about the same time, and the postmarks were in August and September of 2017, so the timeliness, I would submit, if these things had any inclination to be interpreted as a threat or a promise, if they come in April, March or April, you know, right before the trial or something, I would submit that there might be sufficient evidence of that, but in this particular case, there should not have been any structural injustice that happened. And finally, as I alluded to when I was opening, both the departure motions and variance motions were denied, and under Gaul, the standard review is a reasonable disappointment, abuse of discretion standard. I understand there's a high burden, but this sentence was certainly more than necessary to punish the crime as it was intended. Over my time right now, I'll reserve the rest of it for rebuttal, if necessary. All right. Yeah, you have some rebuttal time. All right, Mr. Bragdon. Good afternoon. May it please the court. My name is David Bragdon, and I represent the United States. I do have a few things to say on some of the issues raised by Mr. Ashton. But given that there's a lot of issues, I did want to just open at the beginning and see if there were any particular questions the court would like me to focus on. This is Bill Trax. I have a question about the abortion testimony. Yes. It's my understanding from your brief that you said it was relevant because it went to the defendant's control and direction of Ms. Parker. But isn't it the testimony that she didn't do what he said, that she didn't get the abortion? Yes, Your Honor. It is the testimony that she did not get the abortion. And so I think the control would be here that she didn't get the abortion, but she did go with him to the clinic, and she hid the fact that she didn't get the abortion. And so she walked out the back door, I believe the testimony says, without ever telling him that she had not gotten the abortion. And his control is so complete that he didn't actually find out that she was still pregnant until after her arrest when she's in jail and her mother goes to him and says, you know, this is a problem. She's in jail. She's pregnant. And so that, I think, is the control. And the thing I would add to that... What does a abortion have to do with the fact she hid she was pregnant? Well, I mean, I guess what I would say is he wanted her to have an abortion, and she wanted him to think she didn't. You know, he controlled her such that she went along with it. It was sort of a passive-aggressive, no, she didn't actually have the abortion. But she wasn't willing to directly oppose him. And I did want to add just something to the relevance of this line of testimony in general. You know, for this charge, we have to approve management or supervision of these five people. And for most of those people, he managed or supervised them through the payment of money. They were like employees to him. But for her, he controlled her through the relationship. And he, in fact, in Joint Appendix 1083, he tells her that if she wants to be around, she needs to be an asset to him. That's how much of control there was. And she testifies also that, you know, she sold drugs for him because she wanted to be around him. And so, you know, she was helping him count money, selling drugs. She unwittingly took this trip to Charlotte to pick up five kilos of cocaine, obeying pretty much every command along the way. And all that, you know, while she's four months pregnant. And so when she testified about her pregnancy, the only question that defense counsel objected to was how he reacted when he found out she was pregnant. And I would say her reaction is relevant because the pregnancy impacts any relationship. And the relationship was the source of his control. To that, I would also add that we cited some cases in our 20HA letter that talks about the relevance of testimony to show a witness or a conspirator's state of mind. And here, I think that the fact that she's desiring to please him, that this relationship is important to her, she's hiding the fact that he's pregnant, all go to show her state of mind. It gets very difficult in a case like this to sort of surgically remove the aspects of the personal relationship from the drug selling when the relationship is the basis for that. So whether or not we determined that the evidence on the abortion was relevant, what if we determined it was nonetheless prejudicial? What happens in that circumstance? Well, Your Honor, I think if the question is whether or not it's prejudicial, then we are on plain equity. Both because they didn't object at all to a lot of the line of testimony, and also because they never made a prejudice objection. And we cited both an unpublished case in this circuit, as well as there's a number of published cases in other circuits that say prejudice objection is a separate objection. And here, when we get to the third prong of plain error review, look at would it have affected the outcome of the trial, Judge Devers says at sentencing that he describes it as a tsunami of evidence that came in against the defendant. He says, literally, a tsunami rolling in. And so I think the evidence was very strong. It was overwhelming. And the other thing I would say about prejudice is this was not incredibly emotional testimony. First of all, if you look at the testimony, she doesn't talk about the impact on it on her. She doesn't talk about how hard it was on her. She just generally states the facts. It's about five pages of testimony when we consider about over 1,300 pages of trial transcript. So it's a very small portion of it. There was only one reference to it in closing arguments. So it's just kind of a blip on the radar there as well. And there, the attorney for the government just referenced it to say, wasn't it obvious she was telling the truth when she talked about this? He used it as a way of supporting her credibility. And further, to the extent abortion is controversial, it is controversial, but she didn't actually have the abortion. And so I think that's relevant, too. The other thing I would note is we did cite, in our 20HA letter, we cited the case of the United States versus Rice, which is an Eighth Circuit case where the court found that even irrelevant admission of testimony about the defendant's girlfriend having an abortion didn't require reversal. And so I think if there had been a prejudice objection, the court would have considered that issue. He might have decided to give a limiting instruction. There could have been a lot of actions he might have decided in the midst of that. Because no prejudice objection was raised, nothing could be done about that. And in terms of how prejudicial it was, the attorneys in the courtroom were really the people in the best position to know if this was prejudicial. And one would think that if it was really prejudicial, the defense attorney would have been jumping up and down, objecting to multiple questions, asking for a bench, bar with the court, possibly even filing a motion to eliminate it. And none of those actions were taken. I'm going to move to, I think, just the sentencing issues, if there's not other questions related to that portion of the testimony. Just to briefly address sentencing, I wanted to note that the court in Joint Appendix 1630-31 does find an alternative variant sentence. And so I think, regardless of the guidelines issues, as we noted in the brief, the lowest possible guideline range this defendant could have had, then 360 months to life. If the defendant wins on every single sentencing objection, he's still a career offender and he would still have 360 to life. A life guideline sentence would still be within the guideline range, and the court found that even if it miscalculated the guideline range, it still imposed life. The second thing I'll note is just that on both the violence and on the drug weight, this court has said that if a party is objecting to information in the pre-sentence report, it has an affirmative duty to show that the information is incorrect. And the defendant below did not make any specific arguments about what was wrong about the drug weight and the PSR or the violent crimes. So I think, in terms of that, the guidelines were accurate, the court did accurately impose them, but even if it didn't, it was an alternative variant sentence. And in terms of substantive reasonableness, in this case, one of the confidential affirmants talks about the defendant's own words where he says that he was a drug dealer his whole life. In the letters to Andreeke of Parker, he's talking about still having five bricks of cocaine and a million dollars and the desire to start up immediately after being released from prison. And there's no indication, well, this is certainly the longest sentence the court could impose. There's no indication that it was unreasonable in the large-scale drug trafficking organization we have. If there's no further questions from the court, we'll rest on a brief on the other issues, and I would ask that this court to... Thank you, Mr. Bragdon. Mr. Ashton? Thank you, Your Honor. Am I on? Yes, sir. Okay. Yeah, thank you. If I could address first the, going back to the abortion issue in control, the problem is with the abortion evidence is highly inflammatory, very prejudicial. It's a hot-button issue. It was then, still is. And they didn't need that. It was totally unnecessary to show her involvement with Mr. McCoy. She was the girlfriend, but she also was a runner for him. She picked up money for him and stuff like that. She was certainly one of five people. This other evidence was totally unnecessary, and we would submit inflammatory. And especially when it came up both times. Again, I do not think it ought to be under a plain error standard, but even if it is, I would certainly submit it was plain and was more than harmless error under all the facts and circumstances. The other point on that is, I know Judge Dever, and he says this in several cases, a tsunami of evidence against the person, but you've got to remember, most all the witnesses had bad criminal records. There were other drug dealers. There were confidential informants trying to get a deal. Ms. Parker was someone with a reputable history prior to this and did not have a record. And to get into all that extraneous information with her, I would submit, was very, very prejudicial. And if there was a, if they could have negated the testimony of these other people, the co-defendants and confidential informants that testified, they could not negate Ms. Parker's testimony. And the prejudice was not that she didn't have the abortion. The prejudice is that Mr. McCoy wanted to have one and took her to get one and that all that evidence came in. As far as the total sentence as incurred, as we said before, I believe the sentence is greater than necessary to satisfy the sentencing factors under section 3553A. We certainly feel a term of years could do that. You actually got seven 480-month or 40-year terms concurrent and three 30, two 30-year terms and a 20-year term. That's more than enough. But, and the judge seemed to have totally given up on Mr. McCoy. And I know he's a young man. He may have had an attitude at some time, but he had a lot of potential. He was a high school graduate. He was a basketball star. He had, he was somewhat charismatic, had intelligence. And if you throw the book at him and give him a life sentence, there's, there's, there's no hope. And I would submit that Mr. McCoy has some hope for rehabilitation down the road. The Pepper case, I believe, has held for nearly 10 years now that post-sentencing rehabilitation can be a good factor. Judge Dever made it pretty clear that no matter what he was giving Mr. McCoy every day that he could. Said twice he was going to incapacitate him, that he would never get out, that he'd be in for the rest of his natural life, and that he suggested he be at a maximum security prison. And I would submit that this was just over the top on something of this particular nature. And that the term of years, it deleted any chance of Mr. McCoy getting out at any time in the future. And in the grand scheme of things, a sentence of some type of term of years, which would offer some hope or chance of rehabilitation down the road would have been appropriate. And so we also submit that the judge should have looked at the variance motion in more detail than he did. I don't know they actually ever ruled on it, but obviously the sentence showed that he, he didn't. And we would ask for a new trial because of the abortion issue, a special verdict form under CCE, and a new sentencing hearing if appropriate. Thank you for hearing us. Well, thank you, Mr. Ashen. I understand you're court appointed, is that right? I am, Your Honor. Yeah. Well, I want to express our appreciation and recognize that, as you know, we value that enormously. And you have enabled our system to go forward in that respect. Thank you very much. We'll adjourn court for today, and I'll ask the judges to, we'll conference the case right after this. Will you please adjourn court? Yes, sir. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, William B. Traxler Jr.